UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| BRANDON WRIGHT | NO.: 18-00058-BAJ-EWD |

### RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 24)** filed by Defendant, seeking the suppression of evidence seized on January 8, 2018 during a traffic stop. (*Id.* at 2). The United States filed a Response. (Doc. 27). The Court held an evidentiary hearing. For the following reasons the **Motion to Suppress (Doc. 24)** is **DENIED**.

### I. BACKGROUND

Defendant's arrest on January 8, 2018 fell at the intersection of two distinct crimes – a burglary and traffic violations. Three deputies from the East Baton Rouge Sheriff's Office, Deputy Edward Wheeler, Deputy William Taylor, and Deputy Kevin Johnson, testified at the evidentiary hearing regarding the events of that day.[1]

Deputy Wheeler testified that on January 8 at approximately noon, East Baton Rouge Sheriff's Office deputies were dispatched to 21375 Carson Road in response to a burglary in progress. (Doc. 26). The dispatcher warned that the burglary suspect had escaped in a gray Ford Mustang and may have stolen a firearm from the victim's

---

[1] Given the consistent, detailed and candid testimony of all three deputies at the evidentiary hearing, the Court finds their testimony to have been credible.

residence. As Deputy Wheeler drove in the direction of the burglary site, he allegedly observed an oncoming vehicle that appeared to exceed the speed limit. Approaching the vehicle, he noticed that it was a gray Mustang with an expired inspection sticker. Deputy Wheeler activated his patrol vehicle's emergency lights and eventually the Mustang pulled into the parking lot of an apartment complex. Defendant, the sole occupant of the vehicle, exited and immediately strode into the apartment complex. Deputy Wheeler testified that he did not follow Defendant into the building alone because of the possibility that Defendant may have possessed the stolen firearm and that, because he was unaccompanied by other officers, an encounter with Defendant under the circumstances posed an unreasonable risk to his safety. Shortly thereafter however, Defendant re-emerged from the apartment building with a Louisiana identification in hand, which he presented to Deputy Wheeler. The deputy cited Defendant for speeding and driving with an expired inspection sticker. Deputy Wheeler testified that he could not remember running the vehicle's license plates through the DMV system to ascertain the registered owner of the vehicle. At some point during the stop, other deputies, including Deputy Taylor and Deputy Johnson, arrived at the scene and assisted in the investigation.

All three deputies testified that during the traffic stop they observed, standing in the parking lot, a woman claiming to be Defendant's sister and the owner of the Mustang. Both the United States and Defendant admit that this woman's true identity remains unverified. Deputy Wheeler testified that the woman possessed the keys to the Mustang and that Defendant identified her as his sister. Deputy Taylor testified that the woman claimed to have moving boxes stored inside the Mustang

2

because she had recently moved into the apartment building. The deputies asked the woman for her consent to search the vehicle. Deputy Taylor and Deputy Wheeler reportedly observed Defendant calling to the woman, urging her not to give consent. Deputy Taylor testified that at first, the woman refused. However, she eventually stated that she did not want the vehicle to be towed and thereafter consented to a search. All three deputies testified that they witnessed the woman sign a consent form.

The consent form and the identity of the woman who signed it remain a subject of contention. The signature on the form appears to be that of either a "Toya Wright" or "Joyce Wright." U.S. Exhibit 1. The lack of clarity in the handwriting renders it difficult to ascertain the woman's first name. *Id.* The Mustang's registration form identifies as the owner of the vehicle a "Tina Wright." Defense Exhibit 1. It is unclear if the woman who signed the consent form was indeed the registered owner of the vehicle. Regardless, it is undisputed that after she signed the form, deputies at the scene searched the vehicle. The search revealed evidence that Defendant now moves to suppress.

## II. DISCUSSION

### A. Standing

Neither party has raised Defendant's standing to challenge the legality of the search of the vehicle. The Court's own review of the facts indicates that Defendant has standing to seek the exclusion of the evidence. The United States Court of Appeals for the Fifth Circuit has held that where a defendant is the sole and lawful occupant of a vehicle when it is stopped and searched, he has standing to challenge

3

the validity of the search. *U.S. v. Edwards*, 577 F.2d 883, 892 (5th Cir. 1978). *See also Byrd v. United States* 138 S.Ct. 1518, 1531 (2018) (finding that a driver in lawful possession of a rental car, even if he is not the authorized driver, has a reasonable expectation of privacy in the vehicle). Here, Defendant was the sole occupant of the vehicle at the time of the search, and as such has standing to challenge the search.

**B. The Stop**

The Fifth Circuit has held that the legality of a traffic stop is determined through a two-tiered reasonable suspicion inquiry. First, a determination must be made as to whether the officer's action was "justified at its inception." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Second, a determination must be made as to whether the actions of the officer were "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

For a traffic stop to be justified at its inception, an officer must have "objectively reasonable suspicion" that some sort of illegal activity, such as a traffic violation, occurred or is about to occur before stopping the vehicle. *Id.* The Court finds that Deputy Wheeler had reasonable suspicion of illegal activity given that Defendant both was speeding and driving a vehicle with an expired inspection sticker.

An officer's actions must also be reasonably related to the circumstances that justified the stop. Here, Deputy Wheeler's decision to pull over Defendant with the intention of giving him a warning or citation was reasonably related to the apparent traffic violations.

4

## C. The Search

Generally, "[t]he proponent of a motion to suppress has the burden of proving by a preponderance of evidence that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Turner*, 839 F.2d 429, 432 (5th Cir. 2016) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). However, in cases where a warrantless search occurs, the United States bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)).

Warrantless searches violate the Fourth Amendment unless they fall within an exception to the warrant requirement; one such exception is a consent search. *United States v. Iraheta*, 764 F.3d 455, 462 (5th Cir. 2014) (citing *United States v. Jaras*, 86 f.3d 383, 388 (5th Cir. 1996)). The Government must establish by a preponderance of the evidence that the consent was (1) voluntary; and (2) given by an individual either with actual authority or apparent authority to consent. *Id.*

### 1. *Voluntariness of Consent*

The Fifth Circuit analyzes six factors in determining the voluntariness of an individual's consent: (1) the voluntariness of the individual's custodial status, (2) the presence of coercive police procedures, (3) the extent and level of the individual's cooperation with the police (4) the individual's awareness of the right to refuse consent (5) the individual's education and intelligence, and (6) and the individual's belief that no incriminating evidence will be found. *See, e.g., United States v. Gonzalez*, 308 Fed. App'x 794, 797 (5th Cir. 2009).

5

The facts in the instant case support a finding of voluntary consent. The consenting woman was not the subject of the traffic stop and therefore was not in custody. She was voluntarily present in the parking lot. Moreover, there is nothing to indicate that she was the target of coercive police procedures. At most, the woman believed that her vehicle would be towed if she refused to consent. The Court finds this alone to be insufficient to create a finding of involuntariness. The woman also likely understood she had the right to refuse consent as the she specifically initialed beside the statement "I understand I have the right to refuse consent" on the consent form. Finally, there are no facts in the record to indicate that the woman believed there was incriminating evidence in the vehicle. As such, the United States has met its burden of proving the woman's consent was voluntary.

### 2. *Authority to Consent*

#### a. **Actual Authority**

Defendant argues that the woman who consented to the search did not possess actual authority to do so. He asserts that because the Government has not identified the woman who consented to the search, it has failed to prove that the registered owner of the vehicle, "Tina Wright," actually consented to the search. Defendant appears to assert that only the registered owner retained actual authority to consent to the search. The Court disagrees.

The law does not require an individual to be the registered owner of a vehicle to possess actual authority. In fact, persons who are in lawful possession of a vehicle and who may not be the actual owner are entitled to consent to a search. *See Byrd*, 138 S.Ct. at 1531. A party has actual authority to consent to a search of an automobile

if the party and Defendant mutually used the automobile and had joint access to and control of it. *Iraheta*, 764 F.3d at 463.

The evidence presented indicates that the woman who consented to the search appeared to the deputies to have had joint access and control over the Mustang. First, all three deputies observed the woman assert that the Mustang belonged to her. Second, both Deputy Wheeler and Deputy Taylor noted that the woman possessed the keys to the vehicle. Third, Deputy Taylor testified that the woman insisted that she had boxes stored in the vehicle from her recent move into the apartment building. Fourth, Deputy Wheeler witnessed Defendant urging the woman not to sign the consent form, suggesting that Defendant himself also believed she had ownership and/or lawful control over the vehicle. Fifth, the signature on the form indicates that the woman's last name was almost certainly Wright. Because the first name of the woman remains unknown, it is entirely possible that she in reality was "Tina Wright," the registered owner of the vehicle. However, even if the woman was not Tina Wright, the evidence indicates that she had joint control over the Mustang, which is sufficient to confer actual authority under the law. *See Iraheta*, 764 F.3d at 463.

### b. Apparent Authority

A consenting party has apparent authority if the officers "reasonably (though erroneously) believed that the person who has consented" had the authority to consent. *United States v. Iraheta*, 764 F.3d at 463. In the instant case, even if the unidentified woman did not possess actual authority to consent to the search, the Court finds that the deputies reasonably believed, given the facts previously noted, that she had the authority to consent to the search. Defendant's primary argument

is that the deputies did not run the Mustang's license plate through the DMV system to verify the identity of the vehicle's owner. Defendant argues that this may have been contrary to standard police procedure. However, Defendant does not cite, and the Court has not found, any authority indicating that such a possible departure from administrative procedure alone would invalidate the search.

III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 24) is DENIED.**

Baton Rouge, Louisiana, this 9th day of November, 2018.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**